Katherine A. Roberts (SBN 259486)
kate.roberts@sidley.com
David R. Carpenter (SBN 230299)
drcarpenter@sidley.com
Beth Anne Scheel (SBN 202064)
bscheel@sidley.com
Abigail Hudson (SBN 327632)
abigail.hudson@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Attorneys for Defendant
Liberty Mutual Group Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| STEPHEN MARANO, on behalf of the individual and all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>LIBERTY MUTUAL GROUP, INC., a Massachusetts Corporation; and DOES 1 through 50, inclusive,<br><br>        Defendant. | Case No. 8:20-cv-2215-CJC-ADS<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>[Filed concurrently with Declaration of Shannon Labadie and Supplemental Declaration of Serena Wannemacher]<br><br>Date: January 25, 2020<br>Time: 1:30 pm<br>Courtroom: 9B |

263929300v.7

## Table of Contents

I.    INTRODUCTION ...................................................................................1

II.   FACTS AND PROCEDURAL BACKGROUND.......................................2

      A.   The Complaint...................................................................................2

      B.   Liberty's Notice of Removal.............................................................5

      C.   Plaintiff's Motion to Remand and Liberty's Updated Calculation.......6

III.  ARGUMENT .........................................................................................8

      A.   Legal Standards Governing the Amount in Controversy....................8

      B.   Plaintiff Misunderstands the Law and Fails to Raise Any Valid *Factual* Challenge to the Amount in Controversy. ...........................................10

      C.   Even if the Motion Stated a Factual Challenge, Liberty Has Met Its Burden of Submitting Evidence and Reasonably Estimating Exposure Well in Excess of $5,000,000. ...................................................14

            1.   Liberty Reasonably Estimates over $3 Million in Overtime Pay Alone...................................................................................15

            2.   Liberty Reasonably Estimates over $1,500,000 in Missed Meal and Rest Breaks. .............................................................17

            3.   Liberty Has Reasonably Estimated Nearly $1 Million for Civil Penalties and Expenses. ........................................................18

            4.   Liberty Is Entitled to Include Attorneys' Fees as a Percentage of the Estimated Recovery, Bringing the Total Estimated Amount in Controversy to Nearly $7,000,000...........................................21

IV.   CONCLUSION .....................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Zep, Inc.*,
    2014 WL 4245988 (N.D. Cal. 2014) ...................................................................... 20

*Appleman v. DS Servs. of America, Inc.*,
    0:14-CV-62275 (S.D. Fla.) .................................................................................... 16

*Arias v. Residence Inn by Marriott*,
    936 F.3d 920 (9th Cir. 2019) ........................................................................ *passim*

*Brown v. Quantcast Corp.*,
    3:19-cv-05773 (N.D. Cal.) ...................................................................................... 16

*Bykov v. DC Transportation Services, Inc.*,
    2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) ...................................................... 22

*Cochran v. Schwan's Home Service, Inc.*,
    228 Cal. App. 4th 1137 (2014) .............................................................................. 20

*Coleman v. Estes Express Lines*,
    730 F. Supp. 2d 1141 (C.D. Cal. 2010) ................................................................ 19

*Dart Cherokee Basin Operating Co. v. Owens*,
    135 S. Ct. 547 (2014) .............................................................................. 8, 10, 12

*Deaver v. BBVA Compass Cons.*,
    13-CV-00222, 2014 WL 2199645 (N.D. Cal. May 27, 2014) ............................... 19

*Dudley v. TrueCoverage LLC*,
    CV 18-3760, 2018 WL 6431869 (C.D. Cal. Sept. 28, 2018) ................................ 16

*Fritsch v. Swift Transp. Co.*,
    899 F.3d 785 (9th Cir. 2018) ................................................................................ 21

*Gutierrez v. Stericycle, Inc.*,
    2017 WL 599412 (C.D. Cal. Feb. 14 2017) ......................................................... 22

*Hamilton v. Wal-Mart Stores Inc.*,
    2017 WL 4355903 (C.D. Cal. Sept. 2, 2017) ....................................................... 21

*Harris v. KM Indus., Inc.*,
  2020 WL 1970704 (N.D. Cal. Apr. 24, 2020) ................................................. 13, 18

*Harris v. KM Industrial, Inc.*,
  980 F.3d 694 (9th Cir. 2020) ............................................................. 12, 13, 18

*Herrera v. Carmax Auto Superstores California*,
  LLC, 2014 WL 12586254 (C.D. Cal. June 12, 2014) .......................... 10, 12, 14, 22

*Hollis v. Union Pac. Railroad Co.*,
  2018 WL 6267342 (C.D. Cal. Sept. 19, 2018) ......................................................... 22

*Ibarra v. Manheim Inv., Inc.*,
  775 F.3d 1193 (9th Cir. 2015) ...................................................................... 8, 9, 14

*Karic v. Major Automotive Comps. Inc.*,
  992 F. Supp. 2d 196 (E.D.N.Y. 2014) ................................................................. 16

*Lopez v. Aerotek, Inc.*,
  2015 WL 2342558 (C.D. Cal. May 14, 2015) ....................................................... 10

*Navarro v. Servisair*,
  LLC, 2008 WL 3842984 (N.D. Cal. Aug. 14, 2008) ......................................... 9, 18

*Patel v. Nike Retail Services, Inc.*,
  58 F. Supp. 3d 1032 (N.D. Cal. 2014) ................................................................. 10

*Ritenour v. Carrington Mortg. Servs. LLC*,
  228 F. Supp. 3d 1025 (C.D. Cal. 2017) ................................................................. 9

*Roth v. Comerica Bank*,
  799 F. Supp. 2d 1107 (C.D. Cal. 2010) ............................................................... 12

*Salter v. Quality Carriers, Inc.*,
  974 F.3d 959 (9th Cir. 2020) ......................................................................*passim*

*Singh v. Gonzales*,
  491 F.3d 1019 (9th Cir. 2007) ........................................................................... 10

*Strong v. Safe Auto Ins. Group, Inc.*,
  2:16-cv-765-EAS (S.D. Ohio) ........................................................................... 16

*Thomas v. Aetna Health of Cal.*,
  1:10-CV-01906, 2011 WL 2173715 (E.D. Cal. June 2, 2011) .............................. 19

iii

**Statutes**

28 U.S.C. § 1332(d) ............................................................................................. 1

28 U.S.C. § 1446 ................................................................................................. 8

Class Action Fairness Act ................................................................................ *passim*

California Code of Civil Procedure section 1021.5 ................................. 21, 23

Lab. Code §§ 204 ................................................................................................ 4

Lab. Code § 210 ................................................................................. 4, 6, 7, 8, 20

Labor Code § 218.5 .......................................................................................... 21

Lab. Code § 221 ................................................................................................ 4

Lab. Code § 226 ............................................................................................ *passim*

Lab. Code § 226.7 .......................................................................................... 3, 4

Lab. Code § 510 ................................................................................................ 3

Lab. Code § 512 ................................................................................................ 4

Lab. Code § 1194 et seq. ....................................................................... 3, 17, 21

Lab. Code § 2802 ....................................................................................... 4, 6, 21

Lab. Code § 1198 ................................................................................................ 3

Unfair Competition Law ................................................................................... 4

**Other Authorities**

Local Rule 7.3 .................................................................................................. 10

Rule 7-3 ............................................................................................................. 7

Rule 8 ............................................................................................................. 1, 8

Rule 11 ............................................................................................................. 23

## I.      INTRODUCTION

Defendant Liberty Mutual Group, Inc. ("Liberty") timely removed this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). While the complaint seeks six separate types of damages, civil penalties, prejudgment interest, and statutory attorneys' fees, it is ambiguous as to the total amount at stake. So Liberty's Notice of Removal provided a short and plain statement that the amount in controversy exceeds $5,000,000, using conservative assumptions and without accounting for several factors that undeniably would result in a higher amount.

In moving to remand, Plaintiff does not allege that the amount in controversy *in fact* is less than $5,000,000, and he has not submitted a declaration or any other evidence to dispute Liberty's allegation. He merely contends Liberty's Notice of Removal "fails to present any summary judgment-type evidenced" [sic] so as "to prove" the amount alleged. Mot. 3. Plaintiff's motion misstates applicable legal standard and fails on the record, as reflected in the Complaint and Notice of Removal, and as supplemented by this Opposition and accompanying papers.

The Supreme Court has made clear that a Notice of Removal need only contain a plausible allegation—consistent with Rule 8—that the amount in controversy exceeds $5,000,000. There is no burden to submit evidence in the Notice of Removal itself. It is only *after* the plaintiff challenges the amount in controversy that *both sides* are supposed to present evidence bearing on the issue. As the Ninth Circuit recently confirmed, a plaintiff cannot to seek remand merely by complaining about the quality of proof in the notice of removal, as "such a challenge is foreclosed" by Supreme Court precedent. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020).

*Salter* is dispositive and alone supports denying the motion to remand. In any event, Liberty is now providing updated, more detailed calculations and support showing the amount in controversy likely exceeds **$7,000,000**. *See infra* at p. 10. These updated calculations are based on, among other things:

- Updated workweek information from Liberty's records, accounting for

1

leaves of absence and other time off (mooting part of Plaintiff's criticism of the calculation used for the Notice of Removal);

- Adding overtime pay on bonuses and commissions (a very significant category of damages which is sought in the complaint but which was not included in the initial removal calculation);

- Providing additional support for various components of the calculations; and

- Adding statutory attorneys' fees (as specifically requested in the Complaint) based on a percentage of the potential recovery.

Liberty's showing easily meets its burden, especially given that Plaintiff has failed to proffer *any* evidence to show the amount in controversy in fact falls below $5,000,000—not even a declaration as to his own hours or damages. Indeed, his motion feigns ignorance over matters such as the length of "shifts," even though that is pleaded in the Complaint and obviously within his own knowledge. As another example, Plaintiff criticizes Liberty for assuming a 100% violation rate for certain penalties, yet the Complaint expressly alleges that "Defendants failed to *ever* pay Plaintiff and the Class Members all wages due." Compl. ¶ 94 (emphasis added). The Court should reject such gamesmanship, which serves no purpose except to waste the parties' and the Court's time. The Motion should be denied.

## II.   FACTS AND PROCEDURAL BACKGROUND

### A.   The Complaint

On October 19, 2020, Plaintiff filed his complaint asserting various wage-and-hour claims on behalf of himself and a putative class of "all individuals who are or were employed by Defendants in California as Sales Representatives and equivalent positions" since October 19, 2016. Compl. ¶ 2; *see also id.* ¶ 3 (alleging a class period extending four years prior to the filing of the complaint).[1]

The Complaint alleges nine causes of action. Each is based on alleged

---

[1] The Complaint was included in the removal papers and can be found at Docket Entry ("Dkt.") No. 1-5.

OPPOSITION TO MOTION TO REMAND

263929300v.7

systematic conduct purportedly resulting in regular violations "[t]hroughout the class period." Compl. ¶¶ 18-30. The claims are as follows.

1. **Failure to pay wages due** (Lab. Code §§ 1194 et seq.). Plaintiff alleges that Liberty had a "practice of not paying employees based on their actual hours worked and instead unlawfully altering employee time records to reflect hours worked in half-hour intervals," and that this rounding policy "systematically" undercompensated employees. Compl. ¶¶ 18, 41-50.

2. **Failure to pay overtime** (Lab. Code § 510, 1198). Plaintiff alleges that he and the putative class "typically … worked eight (8) or more hours each workday, five or more days each workweek, for a total of forty (40) or more hours each workweek," but "were not paid at all for overtime hours" or were underpaid. Compl. ¶¶ 19-20; *see also id.* ¶¶ 51-56. Such unpaid overtime allegedly includes not only periodic daily overtime or work in excess of forty hours a week, but also weeks in which Plaintiff and the putative class members worked "all seven days in a workweek" or worked "double time" (more than 12 hours in a single day, or over eight hours on the seventh consecutive day). *Id.* ¶ 20; *see also id.* ¶ 52. Plaintiff also alleges (among other things) that, even as to wages and overtime paid, "Defendants miscalculated the regular rate of pay, overtime rate of pay, and double time rate of pay when taking into account non-hourly compensation for Plaintiff and the Class Members." *Id.* ¶ 20.

3. **Rest period violations** (Lab. Code § 226.7). Plaintiff alleges "[t]hroughout the Class Period, due to the demands of the job, Plaintiff and the Class Members were not authorized or permitted to take ten-minute off-duty rest periods" at the required intervals, and "even when they were permitted to take ten-minute timely rest periods, they were not provided with off-duty rest periods as they were required to remain on-duty and charged with various tasks during their rest periods." Compl. ¶ 61. Plaintiff further alleges that, "[d]espite this failure, Defendants failed to *ever* pay a rest period premium wage." *Id.* (emphasis added); *see also id.* ¶¶ 21-22.

4.     **Meal period violations** (Lab. Code §§ 226.7, 512). Plaintiff similarly appears to allege that the putative class members were *never* provided compliant meal periods—either because they were forced to miss them or because they were required to remain on-duty—and further that they were not paid any meal period premium wages. Compl. ¶¶ 23-24; 71-72.

5.     **Failure to Reimburse Expenses** (Lab. Code § 2802). Plaintiff alleges that he and the putative class members were "never reimbursed" for all necessary business expenses, including "the use of their personal cell phones and vehicles for work purposes." Compl. ¶¶ 25-26, 78.

6.     **Unlawful Deductions** (Lab. Code § 221). Plaintiff alleges that "[t]hroughout the Class Period, Plaintiff and the Class Members had amounts deducted from their wages by Defendants which were not authorized by law or by them." Compl. ¶ 27; *see also id.* ¶ 82. Plaintiff never specifies the nature or amount of the deductions.

7.     **Wage Statement Violations** (Lab. Code § 226). Plaintiff alleges that "[t]hroughout the class period," Liberty "knowingly and intentionally" issued incomplete or inaccurate wage statements, giving rise to civil penalties. Compl. ¶¶ 28, 84-89.

8.     **Failure to Timely Pay Wages** (Lab. Code §§ 204, 210). Plaintiff alleges that "Defendants failed to *ever* pay Plaintiff and the Class Members all wages due," resulting in penalties of up to $200 per putative class member per pay period "plus 25 percent of the amount unlawfully withheld." Compl. ¶¶ 93-94 (emphasis added); *see also id.* ¶ 29.

9.     **Violation of the Unfair Competition Law ("UCL")**. Plaintiff alleges violations of the UCL that are derivative of the other claims. Compl. ¶¶ 30, 95-106.

Based on the above, Plaintiff seeks various forms of relief relevant to the amount in controversy:

- Unpaid wages, including overtime (Compl. ¶¶ 46-47, 56, 101 & Prayer ¶¶ 2-3);

4

- Premiums for missed meal and rest periods (Compl. ¶¶ 62, 72 & Prayer ¶¶ 4-5);
- Damages for expenses and deductions (Compl. ¶¶ 79, 83 & Prayer ¶¶ 6, 7);
- Civil penalties (Compl. ¶¶ 89, 93-94); and
- Attorneys' fees with respect to all causes of action (Compl. ¶¶ 49, 56, 63, 73, 79, 83, 89, 94, 104 & Prayer ¶ 15).

### B.    Liberty's Notice of Removal

The Complaint was served on October 23, 2020, and on November 20, 2020, Liberty timely removed the action pursuant to CAFA. Notice of Removal ¶¶ 1, 7 (Dkt. 1). In addition to the Notice of Removal, Liberty provided a declaration from Serena Wannemacher, a manager at Liberty who reviewed records from Liberty's payroll and compensation departments. *See* Wannemacher Decl. (Dkt. 1-4). Liberty also submitted a declaration from counsel Katherine Roberts. *See* Roberts Decl. (Dkt. 1-1).

In support of Removal, Liberty stated as follows. First, there is minimal diversity of citizenship (as Marano is citizen of California and Liberty is a citizen of Massachusetts). Notice of Removal ¶¶ 3-5; Wannemacher Decl. ¶ 3. Second, the putative class, as defined in the Complaint and based on Liberty's employment records, consisted of 175 members as of September 30, 2020, and thus numerosity under CAFA is met. Notice of Removal ¶ 8; Wannemacher Decl. ¶ 7. Third, the aggregate amount in controversy exceeds $5,000,000 (excluding interest and costs). Notice of Removal ¶ 8; Wannemacher Decl. ¶ 12.

As explained in the Notice of Removal, Liberty calculated the amount in controversy "based on Defendant's actual employment records showing the number of weeks each putative class member worked in the job classifications encompassed by the applicable putative class definition, as well as the putative class members' average base rate of pay during those weeks." Notice of Removal ¶ 10; Wannemacher Decl. ¶ 9. To that data, Liberty then applied reasonable assumptions based on the allegations in the Complaint and experience of counsel to calculate the amounts relating to just a portion of the categories of recovery alleged in the Complaint:

5

| Category | Amount Alleged in Complaint |
|---|---|
| Overtime (calculated on the base salary only) | $2,233,655.25 |
| Meal Period Premiums | $893,462.10 |
| Rest Period Premiums | $893,462.10 |
| Wage Statement Penalties (Lab. Code Sec. 226) | $225,950.00 |
| Business Expenses (Lab. Code Sec. 2802) | $314,370.00 |
| Lab. Code Sec. 210 Penalties | $451,900.00 |
| **Total:** | **$5,012,799.45** |

Wannemacher Decl. ¶ 12.

As explained in the Notice of Removal, that calculation "materially underestimate[d] the alleged damages in this case." Notice of Removal ¶ 10. In particular, the overtime damages were calculated based only on Sales Representatives' "base rate of pay," whereas Sales Representatives also receive substantial commissions and bonuses, and those factor into overtime pay as well. *Id.*; Wannemacher Decl. ¶ 9; *see also* Declaration of Shannon Labadie ("Labadie Decl.") ¶¶ 7-8.[2] The calculation above also did not take in account other categories of recovery explicitly requested in the Complaint, such as double-time wages for overtime, the 25% penalty for any unlawfully withheld wages alleged under Labor Code Section 210, or attorneys' fees. *See* Wannemacher Decl. ¶¶ 11-12.

### C.   Plaintiff's Motion to Remand and Liberty's Updated Calculation

On December 15, 2020, Plaintiff filed his Motion to Remand. The motion is unaccompanied by any substantive declaration or any evidence whatsoever, and nowhere does Plaintiff allege that the amount in controversy *in fact* is $5,000,000 or

---

[2] Incorporating commissions/bonuses into the overtime calculation is a far more complex process. *See* Labadie Decl. ¶ 8. For that reason, and because it was unnecessary to show that the amount in controversy exceeds $5,000,000, Liberty did not attempt to undertake that calculation in its Notice of Removal, although it has done now.

263929300v.7

less.[3] Rather, the ground for remand is purportedly that "defendant fails to present any summary-judgment-type evidenced [sic] and instead relies on a series of self-serving assumptions." Mot. 3; *see also id.* at 5 ("Defendant's guesstimates about the damages at issue in this case fall far short of its burden to prove, by a preponderance of the evidence using summary-judgment-type evidence, that the amount in controversy exceeds $5 million."); *id.* at 18 ("Because Defendant's removal of this action was improper and lacks competent, summary-judgment-type evidence, Plaintiff respectfully requests this court to grant this Motion ….").

As explained in the argument, Plaintiff is not actually raising any factual challenge to the amount in controversy, so Liberty ought not to be required to present any additional evidence or explanation at all. But for the sake of completeness, Liberty is including with this Opposition revised calculations based on the Labadie Declaration, as well as additional records and evidence. Most significantly, these calculations add in an overtime pay estimate based on commissions and bonuses. The revised calculations are summarized below and explained in detail in the argument:

| | |
|---|---|
| Overtime—Base Salary (avg. 4 hrs/week) | $1,535,287.58 |
| Overtime—on Commission/Bonuses (4 hrs/week) | $1,485,122.41 |
| Missed Meal and Rest Periods (6 total per week) | $1,534,954.26 |
| Unreimbursed expenses ($70/month) | $314,370.00 |
| Labor Code § 226 Penalties | $225,950.00 |
| Labor Code § 210 Penalties (not including 25% of unpaid wages) | $451,900.00 |
| **SUBTOTAL** | **$5,547,584.25** |
| Attorneys' Fees (25% of recovery) | $1,386,896.06 |
| **UPDATED ESTIMATE** | **$6,934,480.31** |

---

[3] The only declaration is an attorney declaration regarding the Rule 7-3 conference.

1   Even this updated estimate does not include certain categories of damages

2   explicitly sought in the Complaint as follows: (1) straight-time pay based on the

3   alleged "rounding policy," plus liquidated damages thereon (First Cause of Action);

4   (2) alleged miscalculation of the rates of pay, even when overtime wages were paid;

5   (3) double-time overtime pay; (4) alleged unlawful deductions; and (5) the penalty

6   under Labor Code § 210 of an additional 25% of the unpaid wages owed.

7   **III.   ARGUMENT**

8   Plaintiff's Motion does not challenge that CAFA's diversity and numerosity

9   requirements are met. Instead, Plaintiff challenges only the sufficiency of evidence

10   presented in support of the amount in controversy in the Notice of Removal.

11   Plaintiff's Motion fails under Ninth Circuit law and on the record.

12   **A.    Legal Standards Governing the Amount in Controversy.**

13   Under 28 U.S.C. § 1446, a notice of removal need only contain "a short and

14   plain statement of the grounds for removal." The Supreme Court has characterized

15   this requirement as akin to the pleading standard under Rule 8 of the Federal Rules of

16   Civil Procedure. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554

17   (2014). Accordingly, the Supreme Court had made it clear that a notice of removal

18   "need include only contain a plausible allegation that the amount in controversy

19   exceeds the jurisdictional threshold" and "need not contain evidentiary submissions."

20   *Id.*; *see also Salter*, 974 F.3d at 963.

21   It is only *after* "a plaintiff contests a defendant's allegation concerning the

22   amount in controversy" that "both sides may submit proof and the court decides, by a

23   preponderance of the evidence, whether the amount-in-controversy requirement has

24   been satisfied." *Dart*, 574 U.S. at 88. Such evidence may be in the form of "affidavits

25   or declarations, or other 'summary-judgment-type evidence relevant to the amount in

26   controversy at the time of removal." *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193,

27   1197 (9th Cir. 2015). Even "when a defendant's allegations of removal jurisdiction are

28   challenged, the defendant's showing on the amount in controversy may rely on

8

reasonable assumptions." *Salter*, 974 F.3d at 963 (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019)); *see also Ibarra*, 775 F.3d at 1197 (explaining that a defendant cannot rely on "mere speculation and conjecture, with unreasonable assumptions," but where the defendant presents "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations, that kind of reasoning is not akin to conjecture, speculation, or star gazing") (quotation and alterations omitted).

Critically, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability," and "[i]n that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927. Thus, there is no "requirement that [a defendant] prove it actually violated the law at the assumed rate" to support removal (especially given that a defendant—as here—typically disputes there were any violations at all). *Id.* Likewise, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less" than the requisite amount after discovery and adjudication of liability issues. *Id.* (quotation omitted).

Moreover, when (as here) a plaintiff purports to challenge a defendant's calculation without offering any declaration or evidence in support of an alternative, the court should draw a negative inference *against plaintiff.* As one court explained:

> Although plaintiff claims defendant simply invents numbers in order to meet the amount in controversy requirement, he offers no alternative. For instance, he claims that defendant's calculations take into account three meal period violations per week without arguing that the same is untrue. He does not limit his claim by stating that only a certain number of hours went uncompensated. Nevertheless, he seeks remand. Plaintiff cannot have his cake and eat it too.

*Navarro v. Servisair*, LLC, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008); *see also, e.g., Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017) (denying motion to remand: "Plaintiffs do not sufficiently contest

9

Defendant's allegation because they never contend that they are putting an amount lower than $5 million at issue and do not offer any conflicting evidence that call Defendant's estimates into question."); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (denying motion to remand where "Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely," despite having the opportunity to do so); *Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d 1032, 1041 (N.D. Cal. 2014) (similar); *Herrera v. Carmax Auto Superstores California*, LLC, 2014 WL 12586254, at *2 (C.D. Cal. June 12, 2014) (rejecting notion that plaintiff can "avoid federal jurisdiction by purposefully opaque pleading"); *cf. Singh v. Gonzales*, 491 F.3d 1019, 1024 (9th Cir. 2007) (explaining the "generally accepted principle of law" that "[w]hen a party has relevant evidence in his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him") (quotation omitted).[4]

### B. Plaintiff Misunderstands the Law and Fails to Raise Any Valid *Factual* Challenge to the Amount in Controversy.

As noted above, Plaintiff never alleges or submits evidence to show that the amount in controversy *in fact* is below CAFA's jurisdictional threshold. Instead, the thrust of the remand motion is that Liberty failed to present sufficient "summary-judgment-type" evidence of the amount in controversy *in the Notice of Removal itself.* Mot. 3, 5, 8, 14, 15, 17. That argument plainly misunderstands the law, as there is no requirement to include evidentiary submissions in the Notice of Removal itself. *See Dart*, 135 S. Ct. at 554; *Salter*, 974 F.3d at 963. The Ninth Circuit in *Salter* rejected a similar motion, explaining a plaintiff may *not* seek remand simply by complaining about the quality of proof in the notice of removal, as "such a challenge is foreclosed by the Supreme Court's decision in *Dart* and our prior opinion in *Arias*." *Salter*, 974

---

[4] It would be entirely improper for Plaintiff in reply to submit a declaration or any other evidence that should have been included in his moving papers. Indeed, at the Local Rule 7.3 conference, Liberty's counsel specifically asked whether Plaintiff would be providing a declaration, and Plaintiff's counsel said no.

F.3d at 963; *see also Arias*, 936 F.3d at 927 (holding that it was error for district court to remand action *sua sponte* based on theory that the defendant "did not provide evidence" for its assumed violation rates).

*Salter* was a wage-and-hour case removed under CAFA, where the defendant submitted a company declaration that summarized business records and estimated the amount in controversy. The plaintiff and the district court criticized the declaration as making "unsupported and conclusory statements" and as being based on unsupported assumptions. *Salter*, 974 F.3d at 962, 964-65. Critically, however, the plaintiff had "not really challenged the *truth*" of the jurisdictional allegations, did not assert that the defendant "misinterpreted the thrust of the complaint," and "did not offer any declaration or evidence that challenged the factual bases of [the defendant's] plausible allegations." *Id.* at 964 (emphasis added). The Ninth Circuit characterized the motion as merely raising a "facial attack" on the plausibility of the allegations, rather than a "factual attack on jurisdiction." *Id.* (explaining that a "factual attack … contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings"). Because the plaintiff had not raised a valid *factual attack*, the defendant had no burden to submit any further proof, and remand was improper. *Id.* at 964-65.

Likewise here, Plaintiff does argue that the amount in controversy *in fact* is below $5,000,000. He does not argue that Liberty "misinterpreted the thrust of the complaint," and does "not offer any declaration or evidence" to support a contrary calculation. *Salter*, 974 F.3d at 964. He merely argues that the notice of removal lacks "summary-judgment-type" evidence to support all of the assumptions and *prove* the violation rates and amount in controversy (e.g., Mot. 3, 5, 8, 14, 15, 17)—the same kind of argument that *Salter* found "foreclosed" by precedent. Indeed, Plaintiff even suggests that, to remove, a defendant must launch an "investigation into its labor practices" and then "calculate *the actual violation rates* for Plaintiff and the putative class members," Mot. 8 (emphasis added)—an argument that was explicitly rejected in *Arias. Arias*, 936 F.3d at 927 (finding there is no "requirement" that a defendant

11

"prove it actually violated the law at the assumed rate").[5]

While Plaintiff also asserts that courts "strictly construe removal statutes against removal jurisdiction," Mot. 3, that misstates the law in CAFA removal cases. The Supreme Court has specifically *rejected* the notion that there is any presumption against removal in the context of CAFA, "which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart*, 135 S. Ct. at 554.

Plaintiff nowhere acknowledges *Salter* or *Arias* and instead characterizes the motion as raising a "factual attack" based on *Harris v. KM Industrial, Inc.*, 980 F.3d 694, 700 (9th Cir. 2020), which he cites for the proposition that "'[a] factual attack … need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence.'" Mot. 6.[6] *Harris* did not purport to overrule *Salter* and instead was distinct from *Salter* (and this case) in a critical way—namely, the plaintiff in *Harris* "directly challenged *the truth*" of an essential allegation in the removal petition. *Harris*, 980 F.3d at 700 (emphasis added). Specifically, the defendant assumed that all 442 putative class members were full-time employees who fell within both of the subclasses for missed meal and rest breaks (*i.e.*, that they all worked shifts long enough to qualify for each kind of break), whereas the plaintiff disputed the point and argued that the removal was "predicated upon misinterpretations of the class definitions and allegations asserted in the complaint." *Id.* at 698-99, 700-701. *Harris* did *not* involve a case in which a plaintiff merely complained about the evidence to support the assumed violation rates; to the contrary, the *Harris* district court *accepted* the defendant's assumptions about the violation rates but remanded due to the more

---

[5] To the extent Plaintiff infers a contrary rule from *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1130 (C.D. Cal. 2010), *Roth* is inconsistent with *Arias* (which is superseding Ninth Circuit precedent) and has been specifically criticized for misstating the defendant's burden. *See Herrera*, 2014 WL 12586254, at *2.

[6] The majority in *Harris* ordered remand over a dissenting opinion by Judge Collins. The defendant has filed a petition for rehearing or rehearing on en banc, which is currently pending after the panel called for an answer. *See* Case No. 20-16767.

fundamental dispute over how many class members fell within the subclasses. *See Harris v. KM Indus., Inc.*, 2020 WL 1970704, at *2-3 (N.D. Cal. Apr. 24, 2020).

Here, unlike in *Harris*, the Complaint alleges that putative class members were full-time employees (asserting that they typically worked eight or more hours a day, five or more days a week, for forty or more hours a week, Compl. ¶ 19), and that, throughout the class period, they were allegedly subjected to numerous forms of systematic and regular Labor Code violations. *See* Compl. ¶¶ 18-30. Plaintiff does not contend that Liberty misinterpreted the Complaint or class definition and does not dispute the *truth* of the ultimate allegation that the amount in controversy exceeds $5,000,000 (or any other particular assumption in Defendant's removal papers). Plaintiff merely complains that the assumptions and calculations were not supported by summary-judgment-type evidence in the Notice of Removal itself, while arguing that there is a "risk of overestimations" as to certain aspects of the calculation. Mot. 8, 11. At the same time, Plaintiff's Motion ignores entirely other categories of damages explicitly alleged in the Complaint—such as overtime on commissions/bonuses and double-time pay—that indisputably would increase the amount in controversy well beyond what was previously estimated.[7]

For these reasons, Plaintiff's motion should be understood as misguided facial attack on the sufficiency of the allegations in support of removal, rather than as a factual attack on whether jurisdiction in fact exists. Under either framing, the motion should be denied because the amount of controversy is properly and reasonably supported, and Plaintiff's motion fails to present any evidence to the contrary.

---

[7] Plaintiff's assertion that "Defendant's own calculation of the amount in controversy **barely** clears the $5 million threshold," Mot. 11, blatantly misinterprets the Notice of Removal. As the Notice of Removal explains, its sample calculation "materially underestimate[d] the alleged damages in this case" because it did not account for certain significant categories of additional damages explicitly requested in the Complaint, such as overtime pay calculated based on commissions and bonuses. Notice of Removal ¶ 9; Wannemacher Decl. ¶ 10-12.

13

**C.    Even if the Motion Stated a Factual Challenge, Liberty Has Met Its Burden of Submitting Evidence and Reasonably Estimating Exposure Well in Excess of $5,000,000.**

As noted above, when there is a *factual* challenge to the amount in controversy, the defendant has the opportunity to bolster its Notice of Removal by submitting declarations or other evidence—typically payroll information relating to the putative class—combined with reasonable assumptions, extrapolations, and inferences based on the Complaint about the type and rate of alleged violations. *See Salter*, 974 F.3d at 963; *Arias*, 936 F.3d at 927; *Ibarra*, 775 F.3d at 1197; *Herrera*, 2014 WL 12586254, at *2. The defendant is not required to do a plaintiff's work for him and *prove an actual* violation rate. *Arias*, 936 F.3d at 927; *Herrera*, 2014 WL 12586254, at *2.

To provide a basis for estimating damages, in the Notice of Removal and further in this Opposition, Liberty has relied on information from its human resource and payroll systems, including (i) to identify employees who worked as non-exempt "Sales Representatives" (or similar positions) in California during the putative class period, and the number of months they worked within those positions, (ii) to determine the average rate of base pay (the base hourly rate), and (iii) to determine the total number of full-time equivalent workweeks at issue in the class period. Wannemacher Decl. ¶ 9; Supplemental Declaration of Serena Wannemacher ("Wannemacher Supp. Decl.") ¶ 2-7, Exs. A, B. (attaching payroll records).[8] For this Opposition, Liberty has also taken into account leaves of absence, holidays not worked and other days off, to address Plaintiff's complaint that the initial calculation

---

[8] Plaintiff's objections to the Wannemacher Declaration are without merit. It is perfectly appropriate for Liberty, in its notice of removal, to summarize the content of voluminous company records through the declaration of a qualified company representative. *See Salter*, 974 F.3d at 963. In any event, for this Opposition, Liberty is also attaching underlying exhibits and data, making the objection moot.

Moreover, while cases explain that a defendant may submit "summary-judgment-type" evidence to support a calculation, they do not hold that, for purposes of CAFA removal, the Rules of Evidence are as strictly applied as they would be in an actual summary judgment motion, given that the defendant's burden is merely to estimate what is at stake, and not to prove the damages themselves. *See Arias*, 936 F.3d at 927.

14

did not do so. *See* Wannemacher Supp. Decl. ¶ 5, 7-9; *cf.* Mot. 12.  Liberty then used the revised number of workweeks to create new estimates for overtime based on an assumption of four hours of unrecorded overtime per workweek and meal and rest period premiums based on an assumption of three missed meal periods and three missed rest breaks per workweek. *See* Wannemacher Supp. Decl. ¶ 6-9.

Based on this evidence, the allegations of the Complaint, and other reasonable assumptions explained below, Liberty estimates that the amount in controversy likely approaches or exceeds **$7,000,000**. Even if Plaintiff wanted to nitpick certain assumptions, the jurisdictional amount would still easily be satisfied.

### 1.    Liberty Reasonably Estimates over $3 Million in Overtime Pay Alone.

In the Notice of Removal, Liberty performed a very simple overtime pay calculation using only an average base hourly rate for the putative class members, without even attempting to account for the substantial commissions and bonuses that they also earned (more than 2.5 times their base earnings). Wannemacher Decl. ¶ 9. Yet the Complaint expressly alleges that the overtime and double time rate of pay must "tak[e] into account non-hourly compensation for Plaintiff and the Class Members" (Compl. ¶ 20), and that is in fact Liberty's practice. *See* Labadie Decl. ¶¶ 7-8. For this Opposition, Liberty has completed updated calculations resulting in an estimated $3,020,409.99 in overtime damages: $1,535,287.58 based on the base salary rate, plus $1,485,122.41 based on the commissions and bonuses. *See* Wannemacher Supp. Decl. ¶ 9; Labadie Decl. ¶ 6-10.

In the Motion, Plaintiff gripes about the assumption of an average of 5 OT hours/week used in the Notice of Removal but does not provide an alternative estimate. Mot. 9.[9] An average of five hours per week is well within what has been

---

[9] Moreover, Plaintiff misrepresents the assumption. Liberty was not contending that "*all* class members experienced five unpaid overtime hours for *each and every one* of the 19,402 workweeks for which the class members were compensated." Mot. 9.

OPPOSITION TO MOTION TO REMAND

263929300v.7

alleged in other cases involving insurance sales representatives or other types of sales representatives. *See, e.g.*, *Dudley v. TrueCoverage LLC*, CV 18-3760, 2018 WL 6431869 (C.D. Cal. Sept. 28, 2018) (noting allegation that insurance sales agents usually worked "ten-hour days and five or six days a week"); *Karic v. Major Automotive Comps. Inc.*, 992 F. Supp. 2d 196 (E.D.N.Y. 2014) (stating car "[s]ales representatives generally worked 45-55 hours per week"); *Brown v. Quantcast Corp.*, 3:19-cv-05773 (N.D. Cal.), Compl. ¶ 20 (D.E. #1) (alleging a sales representative "worked approximately 45-50 hours per week"); *Appleman v. DS Servs. of America, Inc.*, 0:14-CV-62275 (S.D. Fla.), Compl. ¶ 21 (D.E. #1) (alleging sales representatives "worked between 50 and 55 hours per week"); *Strong v. Safe Auto Ins. Group, Inc.*, 2:16-cv-765-EAS (S.D. Ohio), Compl. ¶ 32 (D.E. #1) (alleging insurance sales agent "routinely worked approximately 43 to 48 hours per week").

Nonetheless, to be conservative, Liberty has reduced its assumption to an average of 4 OT hours/week. That average is easily supported not only by examples from other cases but also by the Complaint, which alleges that Plaintiff and putative class members worked a combination of regular overtime hours (e.g., over eight hours per day or over forty hours per week), "double time" (e.g., over 12 hours per day), and all seven days in a week. Compl. ¶¶ 20, 52. For example, a person who works even one "double time" day in a week has necessarily worked *more than four overtime hours*—without even counting the double time itself. Similarly, the Complaint alleges that Plaintiff and putative class members periodically worked "all seven days in a workweek" (Compl. ¶ 20), which implies something around 10-15 hours of overtime in such a week. Moreover, Plaintiff alleges that there was an alleged "rounding policy" that applied to *daily* time records and allegedly "systematically" undercompensated the putative class members, including by undercounting overtime. Compl. ¶¶ 18, 20. For this additional reason, it is reasonable to infer that Plaintiff is

---

Rather, an *average* means that in some weeks a person may work more overtime or none at all, and some people may overall work more than others.

alleging regular unpaid overtime.

Given the various permutations and combinations of overtime work alleged in the Complaint, an average of four overtime hours per workweek is entirely reasonable. Moreover, Plaintiff does not offer any personal testimony to dispute it, and the Court should infer from his silence that is because he *cannot* dispute it or that he is otherwise expecting to be able to argue for such damages following discovery. Either way, Plaintiff's silence effectively concedes that an average of 4 or 5 hours of overtime per week is *at stake* in this case.

Indeed, even the $3 million number stated above likely *understates* the calculation of overtime damages because it does not factor in (a) "double time," which Plaintiffs expressly allege, or (b) Plaintiff's allegation that, even when Liberty paid overtime, it miscalculated the applicable rates of pay (in unspecified ways). In addition, Plaintiff's First Cause of Action alleges that Liberty "systematically" underpaid regular hours ("straight time" pay), and seeks both unpaid hourly wages and "liquidated damages in an additional amount equal to the total amount of wages unlawfully withheld" under Labor Code § 1194, plus civil penalties of up to $250 per pay period. Compl. ¶¶ 18, 48. Even *one* unpaid regular hour per pay period could put hundreds of thousands of dollars in additional damages and penalties at stake.

## 2. Liberty Reasonably Estimates over $1,500,000 in Missed Meal and Rest Breaks.

In the Notice of Removal and for this Opposition, Liberty has assumed that Plaintiff and putative class members missed, on average, 3 meal breaks and 3 rest breaks per week, resulting in an aggregate of $1,534,954.26 at stake. Roberts Decl. ¶ 5; Wannemacher Decl. ¶ 10. Plaintiff purports to dispute those assumptions but does not offer any personal testimony or evidence to the contrary.

The calculation is easily supported by the Complaint; in fact, it is conservative. According to the Complaint, Plaintiff and putative class members "were not authorized or permitted" to take meal and rest breaks, and even when they did take

breaks, the breaks allegedly were *not compliant* with state law because putative class members "were required to remain on-duty" and were "charged with various tasks during their rest periods." Compl. ¶¶ 21, 23, 61. Plaintiff further alleges that Defendants *never* paid any rest or meal period premiums. *Id.* ¶¶ 22, 24, 61. Based on those allegations, it would be reasonable to infer *daily* violations of both the meal and rest break requirements of the Labor Code. On top of that, Plaintiff alleges that he and other putative class members periodically worked "all seven days a week" (Compl. ¶ 20), meaning that there could be more than 10 combined missed break periods per week. Thus, it is conservative and appropriate to assume 3 missed meal breaks and 3 missed rest breaks per week—particularly given that Plaintiff has not offered any testimony to dispute those assumptions.

Attempting to superficially echo *Harris*, Plaintiff asserts that "Defendant presents no evidence that the length of the shifts worked during these periods was eligible for the meal and rest periods mandated by California law." Mot. 12. Plaintiff's argument is frivolous. The Complaint itself pleads that the putative class members were full-time employees who typically worked eight hours or more a day, five days or more per week. Compl. ¶ 19; *see also* Wannemacher Supp. Decl. ¶ 7 (confirming that putative class members are all full-time employees).

Moreover, Liberty's estimate is in line with other case law. For example, in *Navarro*, the defendant assumed three meal period violations per week, and the plaintiff offered no evidence to the contrary, and the court held that the amount in controversy was satisfied. *See* 2008 WL 3842984, at *9. Even if the court assumed 2 missed rest periods and 2 missed break periods per week—as in *Harris*, 2020 WL 1970704, at *2—the meal-and-rest break damages would still exceed $1 million and the total amount in controversy would still be in the range of $6.5 million.

### 3. Liberty Has Reasonably Estimated Nearly $1 Million for Civil Penalties and Expenses.

Plaintiff's challenges to other categories of potential recovery also fail.

263929300v.7

First, Plaintiff argues that it is "speculative" to assume that 100% of pay periods could result in a wage statement penalty or penalties for failure to pay wages timely. Mot. 15-16. But that is precisely what the Complaint alleges: "Defendants failed to *ever* pay Plaintiff and the Class Members all wages due." Compl. ¶ 94 (emphasis added). In particular, Plaintiff alleges an unlawful "rounding policy" that altered the time cards for the putative class and "systematically" undercompensated employees. Compl. ¶ 18. Accepting that allegation as true, it is reasonable to infer that *every* pay period would involve at least some rounding error that (under Plaintiff's theory) resulted in an inaccurate or incomplete wage statement. As another example, Plaintiff alleges (among other things) that Liberty "miscalculated the regular rate of pay, overtime rate of pay, and double time rate of pay when taking into account non-hourly compensation for Plaintiff and the Class Members and/or did not calculate overtime and double time on a weekly basis, as required by California law." Compl. ¶ 20. That too strongly implies an alleged violation during every pay period.

Courts routinely infer a 100% violation rate when, as here, the assumption is consistent with the allegations of the complaint—particularly when Plaintiff has not provided any testimony or specific allegation to the contrary. *See, e.g.*, *Coleman v. Estes Express Lines*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("100% violation rate" appropriate where "Plaintiff included no limitation on the number of violations" and alleged class members "consistently" worked overtime); *Deaver v. BBVA Compass Cons.*, 13-CV-00222, 2014 WL 2199645 (N.D. Cal. May 27, 2014) (assuming 100% violation rate but deducting percentages for sick time and vacations); *Thomas v. Aetna Health of Cal.*, 1:10-CV-01906, 2011 WL 2173715, at *20 (E.D. Cal. June 2, 2011) (assuming 100% violation rate because allegations "put [] all possible provable violations at issue for purposes of the amount in controversy.")

Second, Plaintiff argues that "[e]ven if a 100% violation rate for both statutes were to be assumed, Defendant fails to include statutory caps in its calculation." Mot. 16. Specifically, Plaintiff contends that Labor Code section 226(e)(1) penalties are

19

"not to exceed an aggregate penalty of four thousand dollars ($4,000) per employee,"
and asserts that Defendant somehow ignored that cap by calculating "a total of
$225,950 in wage statement penalties." *Id.* This is another frivolous argument; Liberty
did not ignore the cap. As clearly explained in the Wannemacher Declaration, Liberty
calculated the Section 226 penalties on the premise that they were only recoverable
for the pay periods up to one year prior to the filing of the complaint—*i.e.*, since
October 19, 2019. Since pay periods are bi-weekly Liberty Mutual's removal data was
based on 26 pay periods between October 19, 2019, and when the removal papers
were drafted. Thus, Liberty's calculation ($50 for the first pay period and $100 for
each subsequent pay period) would result in up to $2,550 in penalties per individual—
well below the $4,000 cap.[10]

Third, Plaintiff complains about Defendant's assumption of $70 in
unreimbursed expenses per month (*i.e.*, "$35 of unreimbursed cell phone expenses and
$35 of unreimbursed vehicle expenses per month"), but again, Plaintiff does not
proffer any actual testimony or evidence to support a contrary calculation or explain
why the assumption is somehow unreasonable. Paragraph 26 of the Complaint cites
various cases to support the reimbursement claim, and those cases themselves support
Liberty's assumptions. *See Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App.
4th 1137 (2014) (noting that plaintiff's expert calculated required cell phone
reimbursement as $2 per day); *Aguilar v. Zep, Inc.*, 2014 WL 4245988, at *3 (N.D.
Cal. 2014) (noting that plaintiff sales representatives, respectively, alleged
$24,930.42, $37,596.75, and $80,769.47 in unreimbursed expenses). Again, it is
entirely disingenuous for Plaintiff to contend that Defendant's assumptions regarding
this category of damages are somehow unreasonable, when Plaintiff should know full

---

[10] For the Section 210 penalties, Liberty did not add in Plaintiff's demand for a
penalty of an additional 25% of the unpaid wages owed. Compl. ¶ 93. That alone
would likely add several hundreds of thousands of dollars to the calculation, even if
one treats the penalty as limited to wages that allegedly should have been paid within
the past year.

well what his unreimbursed expenses are and yet has refused to say.

Finally, Plaintiff also alleges that "[t]hroughout the Class Period, Plaintiff and the Class Members had amounts deducted from their wages by Defendants which were not authorized by law or by them." Compl. ¶ 27. The Complaint does not provide *any* details about what this allegation involves and thus Liberty is unable to provide a specific estimate for this claim. Nonetheless, the presence of this claim confirms that Liberty's updated damage calculation *continues to underestimate* the total amount at stake in the litigation.

### 4. Liberty Is Entitled to Include Attorneys' Fees as a Percentage of the Estimated Recovery, Bringing the Total Estimated Amount in Controversy to Nearly $7,000,000.

Estimating all of the categories of damages and penalties described above results in a calculation of over $5.5 million. That alone would be sufficient to satisfy CAFA's amount-in-controversy requirement. But the law is clear that when, as here, attorneys' fees are permitted by statute, the amount in controversy also includes attorneys' fees. *Fritsch v. Swift Transp. Co.*, 899 F.3d 785, 788 (9th Cir. 2018). The attorneys' fees at stake include future attorneys' fees that would be incurred or recoverable for work during the litigation after removal. *Id.* at 793-94.

Here, the Complaint demands attorneys' fees in connection with *each cause of action*. Compl. ¶¶ 49, 56, 63, 73, 79, 83, 89, 94, 104. The Complaint references multiple statutory bases for recovering such fees, including the mandatory fee-shifting provisions in Labor Code §§ 218.5, 226, 1194, and 2802, and the more broadly applicable, discretionary fee provision California Code of Civil Procedure section 1021.5, which applies "in any action which has resulted in the enforcement of an important right affecting the public interest."

In California class actions, plaintiffs' attorneys routinely recover 25% of the class recovery (e.g., the gross settlement amount), and thus courts frequently use 25% of the estimated recovery for amount-in-controversy purposes. *See Hamilton v. Wal-*

21

1   *Mart Stores Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 2, 2017) (allowing

2   estimated fee award of 25% of damages in calculating the amount in controversy

3   under CAFA); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb.

4   14 2017) (adding 25% to the amount in controversy for attorneys' fees); *Herrera*,

5   2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014) ("Substantial authority supports

6   a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which

7   attorneys' fees are available.").

8       Indeed, Plaintiff's counsel *personally* has sought and/or recovered fee awards

9   based on 25% of recovery (or more) in wage-and-hour class actions. *See, e.g., Bykov*

10  *v. DC Transportation Services, Inc.*, 2019 WL 1430984, at *7 (E.D. Cal. Mar. 29,

11  2019) (appointing Melmed Law Group as among class counsel and approving

12  "attorneys' fees to Class Counsel of up to … 25% of the Settlement Amount"); *see*

13  *also Hollis v. Union Pac. Railroad Co.*, 2018 WL 6267342, at *7-8 (C.D. Cal. Sept.

14  19, 2018) (another Melmed Law Group case; observing that "an award of twenty-five

15  percent of the gross settlement amount is the 'benchmark' for attorneys' fees

16  calculations" under Ninth Circuit precedent, but agreeing to 33% award ).

17      Applying a 25% fee benchmark to the gross estimated recovery ($5,547,975.11)

18  results in $1,386,993.78 in attorneys' fees. That brings the total estimated amount in

19  controversy to $6,934,968.89—but again, that is without factoring in additional

20  categories of damages and penalties as explained above.

21      Plaintiff's Motion to Remand bizarrely suggests that even the lower estimate

22  cited in connection with the Notice of Removal—$250,000 based on just 500 hours of

23  work—is somehow "unreasonable." Mot. 16-17. If Plaintiff's counsel is serious about

24  that argument, then he should stipulate in his reply brief or at the remand hearing to

25  disavowing any fee recovery at or above $250,000. Absent such a stipulation, the

26  Court should conclude that Plaintiff's argument is not credible and yet further

27  evidence of gamesmanship in which Plaintiff is purporting to dispute an amount that

28  he and his counsel fully intend to seek.

22

Plaintiff also argues that the certain types of Labor Code claims—particularly, meal and rest period claims—do not support attorneys' fee awards under the Labor Code and thus should not be considered in the fee calculation. Mot. 17. That ignores that the Complaint *explicitly requests attorneys' fees* for *all* causes of action, including the meal and rest period claims. *See* Compl. ¶¶ 63, 73. So, either Plaintiff's counsel violated the state law equivalent of Rule 11 when filing the Complaint, or he has some theory for recovering such fees other than the Labor Code (e.g., under Code of Civil Procedure section 1021.5) and is making a disingenuous argument. If Plaintiff's counsel is willing to disavow any ability to recover fees relating in any respect to the meal-and-rest-period claims, then so be it. The attorneys' fees would still be in the range of $800,000 to $1,000,000 (depending on which damages are included in the calculation), and the amount in controversy would still easily exceed $5 million.

No one expects Plaintiff's counsel to stand up at the hearing and disavow a claim to fees, just as Plaintiff has not factually disputed the unpaid hours he allegedly worked per week or other damages that he is seeking. Plaintiff and his counsel are trying to have their cake and eat it too, all based on a motion that miscomprehends the governing law from the outset and is absolutely devoid of any factual support. Given that Liberty's calculations are supported by actual evidence combined with reasonable assumptions from the Complaint and case law, whereas Plaintiff has failed to present *any* evidence to the contrary, Liberty has easily met any burden in showing that the jurisdictional amount is satisfied.

## IV.  CONCLUSION

For the foregoing reasons, Liberty respectfully requests that Plaintiff's Motion to Remand be denied.

Dated:        January 4, 2021

SIDLEY AUSTIN LLP

By: /s/ David R. Carpenter
    David R. Carpenter
    Attorneys for Defendants Liberty Mutual
    Insurance Group

23

263929300v.7