FILED
CLERK, U.S. DISTRICT COURT

1/14/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| STEPHEN MARANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL GROUP, INC. and DOES 1 to 50,<br><br>Defendants. | Case No.: SACV 20-02215-CJC (ADSx)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND [Dkt. 9] |

## I. INTRODUCTION

Plaintiff Stephen Marano filed this putative wage-and-hour class action against Defendant Liberty Mutual Group, Inc., and unnamed Does in Orange County Superior Court. (Dkt. 1-2 [Complaint, hereinafter "Compl."].) Defendant removed the action to

this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (Dkt. 1 [Notice of Removal, hereinafter "NOR"].)  Before the Court is Plaintiff's motion to remand.  (Dkt. 9 [hereinafter "Mot."].)  For the following reasons, the motion is **DENIED**.[1]

## II. BACKGROUND

Plaintiff, a non-exempt Sales Representative employed by Defendant, alleges that Defendant failed to pay him for all hours worked, including overtime and missed meal periods or rest breaks.  (Compl. ¶¶ 17–30.)  In this case, he asserts eight claims under California's Labor Code for (1) failure to pay all wages due, (2) failure to pay overtime wages, (3) failure to provide compliant rest periods or pay missed rest period premiums, (4) failure to provide complaint meal periods or pay missed meal period premiums, (6) unlawful deductions from wages, (7) failure to provide complete and accurate wage statements, (8) failure to timely pay wages, as well as a ninth claim for (9) violations of California's Unfair Competition Law.  (*See id.*)  Plaintiff asserts these claims on behalf of a proposed class of "all individuals who are or were employed by Defendant[] in California as Sales Representatives and equivalent positions from four years prior to the filing of this Complaint through the date of trial."  (*Id.* ¶ 31.)

Defendant removed the case to this Court, contending that the Court has CAFA jurisdiction because minimum diversity is met, there are over 100 class members, and the amount in controversy exceeds $5 million.  The Court now considers Plaintiff's motion to remand to state court, in which Plaintiff argues that Defendant has failed to meet its burden to show the amount in controversy.

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for January 25, 2021 at 1:30 p.m. is hereby vacated and off calendar.

## III. LEGAL STANDARD

A defendant may remove a civil action brought in a state court but over which a federal court may exercise original jurisdiction. CAFA provides original federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. . . [and] intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). There is "no antiremoval presumption" in cases invoking CAFA because CAFA was enacted to facilitate federal courts' adjudication of certain class actions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* However, if the asserted amount in controversy is contested after removal, "[e]vidence establishing the amount is required." *Id.*; *see Harris v. KM Indus., Inc.*, 980 F.3d 694, 700–01 (9th Cir. 2020). "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 574 U.S. at 88. Ultimately, a removing defendant bears the burden of proving that the amount in controversy is met. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). A removing defendant may rely on "a chain of reasoning that includes assumptions" and

"an assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019).

## IV. DISCUSSION

Plaintiff contends that this case must be remanded because Defendant has not properly established that the amount in controversy exceeds $5 million.[2] Defendant contends the amount in controversy exceeds $7 million. (Dkt. 11 [Defendant's Opposition, hereinafter "Opp."] at 7.) Because Plaintiff contests the amount in controversy, Defendant must provide evidence to support its calculations. *Dart*, 574 U.S. at 89; *Harris*, 980 F.3d at 701.

Plaintiff alleges that Defendant engaged in "a consistent policy of failing to pay all wages due, including minimum wages and overtime wages; failing to authorize or permit compliant rest periods; failing to pay missed rest period premiums; failing to provide compliant meal periods; failing to pay missed meal premiums; failing to reimburse business expenses; failing to issue accurate and complete wage statements; failing to timely pay all wages owed; engaging in unlawful, unfair, and/or fraudulent business practices; and deducting unlawfully from employee wages." (Compl. ¶ 4.) He specifically alleges that (1) Defendant had a practice "of not paying employees based on their actual hours worked and instead unlawfully altering employee time records to reflect hours worked in half-hour intervals," (*id.* ¶ 18), (2) class members "periodically worked more than eight (8) hours in a workday, all seven days in a workweek, and/or more than forty (40) hours in a workweek, but were not paid all appropriate overtime and double time wages for such hours worked," (*id.* ¶ 20), (3) class members "were required

---

[2] Plaintiff does not dispute that the other two CAFA requirements—minimal diversity and minimum class size—are met.

to remain on-duty and/or charged with various tasks during rest periods," (*id.* ¶ 21), class members "were regularly required to take late, on-duty, or interrupted meal periods or forego them entirely," (*id.* ¶ 23), (4) class members "were never reimbursed" for "expenditures or losses includ[ing] the use of their personal cell phones and vehicles for work purposes," (*id.* ¶ 25), and (5) Defendant's "wage statements failed to state the correct amount of gross wages earned" and other required information, (*id.* ¶ 28).

Based on these allegations, Defendant assumes a violation rate of four hours of uncompensated overtime per workweek and three missed meal breaks and three missed rest breaks per week. (Opp. at 16–17.) Defendant also assumes that 100% of pay periods resulted in a wage statement penalty or penalties for failure to pay wages timely and $70 in unreimbursed expenses per month. (Opp. at 19–20.) In support of its calculations, Defendant submits declarations from Serena Wannemacher, a business analyst for Defendant, and Shannon Labadie, a payroll project manager for Defendant. (Dkts. 11-1 [hereinafter "Wannemacher Decl."], 11-4 [hereinafter "Labadie Decl."].) Wannemacher offers the following facts based on her review of company records:  (1) as of September 30, 2020, 175 individuals were within the scope of the class definition in the complaint, (2) all of these employees were full-time employees, (3) these employees had an average pay rate of $15.35 an hour, (4) based on her calculation, these employees worked a total of 16,666.17 workweeks. (Wannemacher Decl. ¶¶ 3–9.) After her review of company records, Labadie estimates that if the putative class members worked an additional four hours a week, they would have earned an average of $89.11 in overtime on commissions and bonuses per workweek, in addition to overtime earned on their base salary. (Labadie Decl. ¶ 10.)

Based on Wannemacher's analysis, Defendant estimates an alleged $1,535,287.58 in unpaid overtime on base hour wages, an alleged $1,485,122.41 in unpaid overtime on commissions and bonuses, and an alleged $1,534,954.26 in unpaid meal and rest period

premiums. (Opp. at 7; Wannemacher Decl. at 9.) It also estimates an alleged $314,370.00 in unreimbursed expenses, an alleged $225,950.00 in § 266 penalties, and an alleged $451,900.00 in § 210 penalties. (Opp. at 7.) Taken together, this suggests an amount in controversy of over $5 million *before* considering potential attorneys' fees.[3]

The Court finds Defendant's calculations are based on reasonable assumptions grounded in the allegations of the Complaint. The amount in controversy considers the amount in dispute, not the amount that a plaintiff is likely to recover. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Arias*, 2019 WL 4148784, at *5 (*quoting Lewis*, 627 F.3d at 401). Plaintiff could have, but did not, make more specific allegations to narrow the scale or scope of this controversy. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007). Defendant is not "required to comb through its records to identify and calculate the exact frequency of violations." *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015). Defendant's assumed violation rates are grounded in the broad allegation that these violations as part of Defendant's "consistent policy" and the specific allegations involving Defendant's various schemes to underpay employees. (*See* Compl. ¶¶ 4, 18–30.) Although courts have assumed 100% violation rates in other cases involving sweeping allegations, Defendant makes limited and reasonable assumptions for these claims. *Cf. Coleman v. Estes Exp. Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010). Furthermore, Defendant's assumption of a wage statement penalty on 100% of pay periods is supported by Plaintiff's allegation that "Defendant[] failed to *ever* pay Plaintiff and Class Members all wages due." (*See* Compl. ¶ 94 [emphasis added].) Defendant's showing is sufficient to satisfy CAFA's amount-in-controversy requirement.

---

[3] Defendant alleges an estimated $1,386,896.06 in attorneys' fees which is 25% of the alleged potential recovery. (Opp. at 7, 21–23.)

Finally, Plaintiff argues that the Notice of Removal must fail because it "relies entirely on a patchwork of guesses and generalizations" and Defendant's calculations are based on "self-serving assumptions lack[ing] adequate evidentiary support." (Mot. at 8.) The Court disagrees. As explained above, Defendant *has* provided evidence: declarations from knowledgeable employees based on their analysis of regularly kept and created business records. (*See generally* Wannemacher Decl.; Labadie Decl.) And Defendant properly estimated violation rates based on reasonable assumptions grounded in the Complaint. *See Arias*, 2019 WL 4148784, at *6. A defendant is not required to "prove it actually violated the law at the assumed rate," *id.*, and Plaintiff has offered no evidence of his own. At this stage, the preponderance of the evidence standard is "not daunting." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted). As such, the declarations submitted and Defendant's reasonable assumptions are sufficient to show by a preponderance of the evidence that the amount in controversy exceeds $5 million.

## IV. CONCLUSION

For the foregoing reasons, Defendant has carried its burden to show that the Court has subject matter jurisdiction over this action under CAFA. Accordingly, Plaintiff's motion to remand is **DENIED**.

DATED: January 14, 2021

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE